BEARDSLEY *v.* ST. JOSEPH CIRCUIT JUDGE.

1. MANDAMUS—DISCRETION OF COURT—HEARING IN ACTION AGAINST BANK.

Writ of mandamus is a discretionary one but relief afforded thereby may not be arbitrarily refused party if he is entitled to have circuit judge compelled to grant him a hearing in his action against bank refusing to pay his checking account.

2. BANKS AND BANKING—DEPOSITORS' TRUST AGREEMENT.

Agreement between persons representing 92 per cent. of deposit liability of bank which had suspended business, allocating 50 per cent. of their deposits to trust fund to liquidate slow assets and enable bank to reopen as going concern, is not binding in law or equity upon depositors not so agreeing.

3. SAME—STATUTES.

Statute providing for reorganization of insolvent banks by agreement of depositors representing 85 per cent. of deposit liability has no application in case where record does not show action to have been taken thereunder (Act No. 8, Pub. Acts 1932 [1st Ex. Sess.]).

4. SAME—BANK HOLIDAY—STATUTES—MANDAMUS.

Bank holiday proclaimed by governor and statute ratifying it which held matters *in statu quo held*, to have no bearing upon issues involved in mandamus proceeding to compel circuit judge to grant hearing in action by depositor against bank which resumed operations prior to proclamation (Act No. 47, Pub. Acts 1933).

5. MANDAMUS—EXECUTIVE ORDER AS TO NATIONAL BANKS—HOARDING.

Executive order requiring national banks, members of Federal reserve system, to be licensed before reopening after presidentially-declared bank holiday and then prohibiting withdrawal of currency for hoarding and other purposes *held*, not a justification for refusal of circuit judge to set case for trial where depositor seeks to recover $157.30 checking deposit from bank.

Mandamus by W. R. Beardsley to compel Theo T. Jacobs, St. Joseph circuit judge, to proceed to the hearing of a case against the First National Bank of Three Rivers. Submitted December 12, 1933. (Calendar No. 37,459.) Writ granted March 6, 1934.

*L. W. Beardsley,* for plaintiff.

*Roy J. Wade (W. Glenn Cowell,* of counsel), for defendant.

WIEST, J. Plaintiff brought an action at law in the St. Joseph circuit against the First National Bank of Three Rivers, to recover $157.30, the amount of his checking deposit. The bank had refused him payment on his check. The case was transferred to the equity side of the court and hearing refused during the time that executive order No. 6073 (see note to 12 USCA, § 95), by the president of the United States remains in force. Plaintiff seeks our writ of mandamus directing the circuit judge to proceed to the hearing. The writ sought is not one of right but if plaintiff is entitled to a hearing we may not arbitrarily refuse him relief. The stay of hearing was based upon the mentioned executive order but, in this court, other reasons in support of the stay are presented.

In July, 1932, the directors of the bank suspended business of the bank because of inability to pay its obligations in full. Thereupon persons representing 92 per cent. of deposits, in order to enable the bank to continue as a going concern, agreed that 50 per cent. of their deposits be allocated to a trust fund for liquidating slow assets transferred to such fund. Plaintiff did not so agree. The allocation was made and the bank resumed operations and is now transacting a general banking business.

Is the bank at this time afforded immunity from judgment upon its confessed liability?

The mentioned agreement with some depositors of the bank in and of itself did not in law or equity bind others. It is familiar history that, in February, 1933, the governor, by proclamation, declared a general bank holiday and, the next month, the president of the United States made it general. This led to State and Federal legislation relative to banks.

In support of the holding of the circuit judge our attention is called to the following statutes, proclamation and order:—Act No. 8, Pub. Acts 1932 (1st Ex. Sess.), effective April 22, 1932, provided plans for reorganization of insolvent banks, by agreement of depositors representing not less than 85 per cent. of the deposit liability, and specified action thereon by the State banking commissioner; application by the attorney general to a court setting forth details of the plan, followed by an order fixing a day of hearing with notice thereof by publication and, upon hearing and approval, if any depositor filed a written objection and refused consent the order of approval was required to set aside assets of a designated sum in charge of a custodian "for the purpose of discharging the liability of the bank toward such objectors." The record does not disclose any action had under this statute and, therefore, it has no applicability.

The bank holiday proclaimed by the governor in February, 1933, and ratified by Act No. 47, Pub. Acts 1933, has no bearing upon issues here involved for it only held matters *in statu quo,* and the defendant bank has resumed operations and is now doing a general banking business. At no time has the bank been in the hands of a receiver. No State law, or Federal law, authorizing the so-called trust agreement, was in effect at the time the bank closed its

doors in July, 1932. The form of the agreement creating the trust fund is in the record but no date of signing, or of the action taken thereon appears.

We assume that resumption of operations by the bank preceded commencement of this suit on December 12, 1932. If so, all subsequent suits, proclamations and orders, State and Federal, relating to closed banks *under receivers or in charge of conservators,* have no bearing. The national banking act of 1933 (48 Stat. at L. p. 193 [12 USCA, § 197a]), effective June 16, 1933, § 29, invoked by defendant bank, accords certain power to the comptroller of the currency, in cases of closed national banks, and the exercise of discretion in permitting them to resume business. What was done toward resumption of business, after the closing of all banks by proclamation of the president, is not set forth in this record.

After submission of this case we called upon counsel to supply information on this point, and we are now advised that the bank resumed business by virtue of a license, issued by the secretary of the treasury, permitting it to open on March 15, 1933, and perform its usual banking functions except:

"(1)  To the extent prohibited in the executive order of the president of the United States issued on March 10, 1933.

"(2)  To the extent limited or prohibited by any executive order of the president or by regulations of the secretary of the treasury."

We later mention the executive order of the president of the United States.

We are also advised that such license was amended pursuant to executive order of January 15, 1934, but the amendment bears no relation to any issue here involved.

Our order called for a showing of cause, if any, sustaining the action of the circuit judge. Such cause is not made to appear in this record.

The circuit judge based his refusal to hear the case upon the existence of an emergency, declared by legislative and executive action, and he was of the opinion that, under executive order of the president of the United States, known as executive order No. 6073, *supra,* the jurisdiction of the circuit court was suspended and he, therefore, ordered that the case would not be set for trial until evidence was presented showing that the proclamation was no longer in force and effect.

The mentioned executive order was promulgated March 10, 1933, and, in substance, authorized the secretary of the treasury, under regulations prescribed by him, to permit any banking institution, organized under the laws of the United States, to perform any or all of their usual banking functions, except as otherwise prohibited, and that banks, members of the Federal reserve system, desiring to reopen for the performance of all usual and normal banking functions, except as otherwise prohibited, "shall apply for a license therefor to the secretary of the treasury." It also provided:

"No permission to any banking institution to perform any banking functions shall authorize such institution to pay out any gold coin, gold bullion or gold certificates except as authorized by the secretary of the treasury, nor to allow withdrawal of any currency for hoarding, nor to engage in any transaction in foreign exchange except such as may be undertaken for legitimate and normal business requirements, for reasonable traveling and other personal requirements, and for the fulfillment of contracts entered into prior to March 6, 1933."

We find nothing in this executive order or amendment mentioned restraining a bank, in full operation, from meeting its obligation to honor checks of a depositor upon his deposit. Certainly there can be no idea of hoarding where the sum involved is $157.30.

We do not understand that there was a re-organization of the bank, nor are we informed that resumption of operations was brought about by action had under Federal or State statutes relative to a permissive moratorium.

It is stated in the brief of attorneys for the bank:

"It may be true (though we are hardly willing to admit it) that no emergency existed when appellant demanded payment but the court's action was based not upon the justice or injustice of his claim nor his ultimate right to relief. It was based upon his discretion and an emergency existing at the time of the continuance."

It would be unfortunate, indeed, for it would seriously affect public confidence, to hold that a national bank in the transaction of its ordinary business has immunity from paying general checking deposits.

This record presents no justification for the order denying plaintiff the ordinary rights of a suitor in the courts of this State.

The circuit judge is directed to grant plaintiff a hearing. Plaintiff will recover costs against the bank. The writ of mandamus will issue.

Nelson Sharpe, C. J., and Potter, North, Fead, and Butzel, JJ., concurred. McDonald and Weadock, JJ., took no part in this decision.